IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JESSIE LEE SATTERWHITE, #131288 )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MATTHEW W. GAGNE )<br>)<br>Defendant. ) | CIVIL ACTION NO. 3:06cv219-MHT<br>(WO) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, the plaintiff, Jessie Satterwhite ("Satterwhite"), a prison inmate, claims his constitutional rights were violated when he was mistakenly arrested by the defendant, Matthew Gagne ("Gagne"), a parole officer employed by the Alabama Board of Pardons and Paroles. Specifically, Satterwhite contends that Gagne falsely arrested him and subjected him to excessive force in violation of the Fourth and Eighth Amendments to the United States Constitution. Satterwhite seeks damages against Gagne in his official and individual capacities, requests that the court take jurisdiction of his state law claims for first degree assault and kidnapping, and asks that the court bring criminal charges against Gagne on charges of first degree assault and first degree kidnapping. (Doc. # 1.)

In accordance with the orders of the court, Gagne filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint.[1]

---

[1] Unfortunately, Gagne's "memo" to his attorney is unsworn and, thus, does not meet the requirements of FED. R. CIV. P. 56 (e)(1) (Requiring that an affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated . . ."). This failure on Gagne's part means that the court cannot, and did not, consider the memo in support of his motion for summary judgment. *See* FED.R.CIV.P. 56(e)(1).

The court then informed Satterwhite that Gagne's special report may, at any time, be treated as a motion for summary judgment, and the court explained to Satterwhite the proper manner in which to respond to a motion for summary judgment. Satterwhite has filed a response. This case is now pending on Gagne's motion for summary judgment. Upon consideration of the motion, and the evidentiary materials filed in support of and in opposition to the motion, the court concludes that Gagne's motion for summary judgment is due to be granted.

## I. BACKGROUND

The pertinent facts are undisputed. On August 10, 2004, Satterwhite was a parolee under the supervision of the Alabama Board of Pardons and Paroles; Gagne was his parole officer. Satterwhite was directed to report to Gagne who was at a revocation hearing in state court when Satterwhite arrived at the LaFayette, Alabama, parole office. Pamela Hadaway, Gagne's assistant, told Satterwhite to have a seat in the waiting room until Gagne returned. When Gagne returned to his office, Hadaway told him that "Jessie" was in the office. At the time, Gagne had an active felony warrant for a Jessie Zachary.

Gagne called Satterwhite into his office and told him to put his hands on the wall. Gagne handcuffed Satterwhite and then had him sit down in a chair in front of his desk. While he was being handcuffed, Satterwhite attempted to turn his head around and ask Gagne what was happening. Gagne advised him to turn back around. Satterwhite complied, and Gagne handcuffed him without resistance or opposition. (Doc. # 12).

After he sat down, Satterwhite once again questioned Gagne about his actions. Gagne opened up the file on his desk and realized he had mistakenly arrested Jessie Satterwhite

instead of Jessie Zachary. At this same moment, Hadaway informed Gagne that it was Jessie Satterwhite in the office, not Jessie Zachary. Gagne immediately removed the handcuffs from Satterwhite. When Satterwhite left Gagne's office, he told Hadaway that "Mr. Gagne arrested me for Jessie Zachary." (*Id*. at 9).

Satterwhite and Zachary share some similar physical characteristics. They are both African American males.[2] Satterwhite is 5'11" tall while Zachary is 5'9" tall. Although Satterwhite weighs 178 pounds, Zachary weighs only 150 pounds. (*Id*. at 8).

## II. DISCUSSION

### *A. Standard of Review*

In order to survive Gagne's properly supported motion for summary judgment, Satterwhite is required to produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide adequate evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d

---

[2] According to Satterwhite, Zachary is "brown-skinned" while he is "dark-skinned." (Doc. # 12 at 8).

607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, entry of summary judgment is appropriate. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### *B. Official Capacity Claims*

Satterwhite seeks to sue Gagne in his official as well as his individual capacity. The court concludes that the individual defendant in his official capacity is immune from suit.

> [A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities."

*Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Gagne, as a State of Alabama parole officer, is entitled to absolute immunity from the claims asserted by Satterwhite against him in his official capacity. Accordingly, the plaintiff's claims for monetary relief against Gagne in his

official capacity are barred by the Eleventh Amendment and are subject to dismissal.

### *C. The Individual Capacity Claims*

The crux of Satterwhite's claims revolve around Gagne's actions on August 10, 2004 which Satterwhite contends constitutes a false arrest in violation of the Fourth Amendment and use of excessive force in violation of the Eighth Amendment.

*1. False Arrest Claims*. Satterwhite's false arrest claims are based on the actions of his parole officer who mistakenly believed Satterwhite to be a parolee under his supervision against whom there was an outstanding felony warrant. (Doc. # 1 at 3; Doc. # 12 at 8, 11). It is undisputed that Gagne arrested and handcuffed Satterwhite as a direct result of his mistaking Satterwhite for Jessie Zachary.[3] (*Id*.). Satterwhite concedes that Gagne handcuffed and arrested him believing that he was arresting Jessie Zachery.

> The defendant went around his desk and set down in a chair, on the defendant office desk was a brown paper folder, defendant open the folder, it was a large picture of Jessie Zachery on the left side of the folder when he open it. Defendant didn't realize he had arrest Jessie Satterwhite instead of Jessie Zachery until the plaintiff . . . . . looked at the picture. stated: Mr. Gagne "that not me, its Jessie Zachery on that picture. At that point defendant Gagne picked up the brown paper folder with a sad look on his fact, and saw that it Jessie Zachery . . . . . . A black male brown skined 5"9 and 150 lbs. whom he had a warrant for parole violation. not Jessie Satterwhite a black male dark-skinned 5"11 and 174 lbs.

(Doc. # 12 at 8).

When Gagne opened the file on his desk and realized he had handcuffed Jessie

---

[3]As a parole officer, state law authorizes and requires that Gagne execute warrants that are delivered to him by "taking such prisoner and returning him to the prison designated by the Department of Corrections." Ala. Code § 15-22-31(c).

Satterwhite and not Jessie Zachary, he immediately uncuffed Satterwhite.

To succeed on his § 1983 claim, Satterwhite must establish that he suffered a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States and that the act or omission causing the deprivation was committed by a person acting under color of state law. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). In *Holmes*, a parolee brought a § 1983 claim against the parole officer and individual parole board members. The Eleventh Circuit held that a parole officer acting within the scope of his duties is entitled to absolute quasi-judicial immunity. *Id.* at 1258-59. The undisputed evidence demonstrates, and Satterwhite points the court to no evidence to the contrary, that Gagne was acting within the scope of his duties as a parole officer when he executed the warrant and arrested Satterwhite. *See* ALA. CODE § 15-22-31(c). Consequently, the court concludes that Gagne is entitled to absolute quasi-judicial immunity on these claims.

Furthermore, Gagne is entitled to summary judgment on the merits of the claims against him, because as a matter of law, under the circumstances of this case, the court has little difficulty concluding that Gagne did not violate Satterwhite's constitutional rights. In this case of mistaken identity, Satterwhite's false arrest claims are premised on the Fourth Amendment. "In order to determine whether there was a constitutional violation, [the court] must examine the totality of the circumstances to see whether the arrest was made pursuant to a reasonable mistake." *Chapman v. City of Atlanta, Ga.*, 192 Fed. Appx. 922, 924 (11th Cir. 2006) *citing Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002).

> The same "reasonable mistake" standard applies (1) in the context of a section 1983 action and (2) when the police have a valid warrant – as opposed to just probable cause – to arrest someone, but mistakenly arrest someone else due to a misidentification. *E.g., White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995) (using *Hill* [*v. California,* 401 U.S. 797, 802 (1971)] "reasonable mistake" standard in section 1983 case and determining that mistaken arrest pursuant to valid warrant was reasonable); *cf. Rodriguez v. Jones*, 473 F.2d 599, 605-06 (5th Cir. 1973) (concluding plaintiff could not recover, under section 1983, against officers who forcibly entered plaintiff's residence pursuant to mistaken belief that two fugitives named in arrest warrants were in residence because officers' mistaken belief was reasonable under the circumstances). *See generally* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated.") (emphasis added). We must, therefore, determine as a legal matter whether Sgt. Farrell and Officer Szczepanski's mistaken arrest of Rodriguez – pursuant to the execution, in the field, of a valid arrest warrant for Heredia – was outside the scope of "reasonable mistakes."

*Rodriguez*, 280 F.3d at 1346.

The court examines "the totality of the circumstances surrounding the arrest to determine its reasonableness." *Id*. at 1347. Satterwhite and Zachary share similar physical characteristics. They are the same race. Their height is within 2 inches of each other. Their weights are not dramatically different. Satterwhite weighs 178 pounds while Zachary weighs 150 pounds. The 2 inch difference in height[4] and 28 pound difference in weight are not sufficient to transform Gagne's error into an unreasonable mistake. *See generally, Id.* at 1347-48. Moreover, both Satterwhite and Zachary were parolees who reported to Gagne. The court concludes that, considering the totality of the circumstances, Gagne's mistaken identification of Satterwhite was reasonable as a matter of law. Consequently, Gagne made

---

[4] In *Rodriguez*, the court found that a 5 inch difference in height did not render an arrest unreasonable. 280 F.3d at 1348.

a "reasonable mistake" when he arrested Satterwhite pursuant to a valid warrant for Zachery, "and, thus, committed no constitutional violation upon which to base a section 1983 constitutional false-arrest claim." *Id*. at 1349.

To the extent Satterwhite claims a violation of his Fourteenth Amendment due process rights based on his false arrest claim, he is entitled to no relief on this basis. In *Baker v. McCollan*, 443 U.S. 137 (1979), the plaintiff was arrested and detained on the basis of a facially valid arrest warrant. However, the arrest warrant was intended for the plaintiff's brother. Despite the plaintiff's protestations of innocence and mistaken identity, he was detained for several days in the county jail. The plaintiff pursued a § 1983 claim against the sheriff for failing to investigate his claims of mistaken identity. The Supreme Court concluded that the plaintiff's detention on the basis of a valid arrest warrant did not constitute a deprivation of liberty without due process of law in violation of the Fourteenth Amendment because the sheriff was under no constitutional duty to investigate the validity of the arrest warrant. Consequently, Satterwhite is entitled to no relief on this basis.

Although Satterwhite also claims a violation of his Fifth, Sixth, and Eighth Amendments rights based on his false arrest claim, he has failed to establish a claim under these theories as offered.[5] Gagne is, therefore, entitled to summary judgment on

---

[5] The Fifth Amendment, in relevant part, prohibits "deprivation of life, liberty, or property, without due process of law." U.S. CONST. amend V (the court notes, however, that the due process clause of the Fifth Amendment applies only to actions taken by the federal government, not state or local governments. *See Richardson v. Belcher*, 404 U.S. 78, 81 (1971)). The Sixth Amendment protects criminal defendants during trial. *See* U.S. CONST. amend VI. The Eighth Amendment protects against cruel and unusual punishments. *See* U.S. CONST. amend VIII. The Eighth Amendment only applies to those persons who have been convicted. *United States v. Myers,* 972 F.2d 1566, 1571 (11th Cir. 1992).

Satterwhite's false arrest claim.

***2. The Excessive Force Claim***.  Satterwhite also claims that Gagne's actions in handcuffing him subjected him to excessive force in violation of the Eighth Amendment. As elaborated in Satterwhite's opposition, his allegations regarding excessive force essentially involve the manner in which Gagne applied the handcuffs. Specifically, Satterwhite maintains that after he complied with Gagne's request that he turn and place his hands against the wall, Gagne then grasped his left hand and "excessively s[n]atch[ed] it off the wall and handcuffed it." Satterwhite further alleges that Gagne forced his right arm into Satterwhite's left upper ribs causing him to be forced up against the wall. (Doc. # 12).

Because Satterwhite's claims arise in the context of an arrest or detention, only the Fourth Amendment is implicated.[6] *See Graham v. Conner*, 490 U.S. 386, 394 (1989).

> The use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). But, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396, 109 S.Ct. 1865. In the Eleventh Circuit, we recognize that the typical arrest involves some force

---

[6] The claims against Gagne are properly before the court as Fourth and Fourteenth Amendment claims.

> It is unclear, however, whether a pre-trial detainee's claim that officers used excessive force against him states a cause of action under the Fourth Amendment. *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10,; *Wright v. Whiddon*, 951 F.2d 297, 300 (11th Cir. 1992.). In contrast, the law is well established that pretrial detainees may bring § 1983 actions to redress violations of their rights under the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10 (*citing Bell v. Wolfish*, 441 U.S. 520, 535-39, 99 S.Ct. 1861, 1871-74, 60 L.Ed.2d 447 (1979)).

*Vineyard v. County of Murray, Ga.,* 990 F.2d 1207, 1211 (11th Cir. 1993).

and injury. *See Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000). *Rodriguez*, 280 F.3d at 1351. "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Id*. Satterwhite has presented no evidence that Gagne handcuffed him in anything other than the "common and ordinarily accepted" method of applying handcuffs. Consequently, the mere fact that Satterwhite suffered some pain as a result of the handcuffing is insufficient, as a matter of law, to sustain a constitutional claim.

In opposition to Gagne's motion for summary judgment, Satterwhite attached a copy of a bill for a CT scan. Satterwhite fails to explain the relevance of this particular bill, except to say that he sought medical treatment. He presents the court no evidence that he suffered more than a minimal injury. "What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." *Id*. at 1353.

Moreover, Satterwhite has presented no evidence that he suffered from some pre-existing injury of which Gagne was aware. In *Rodriguez*, the defendant handcuffed the plaintiff using the common and ordinarily accepted technique. Unfortunately, Rodriguez had recently undergone shoulder surgery and the manner in which he was handcuffed resulted in tragic consequences to him. He was forced to undergo multiple surgeries and eventually the amputation of his arm. *Id*. Nonetheless, the court concluded that the use of force did not rise to the level of a constitutional violation because Rodriguez was handcuffed in "a relatively common and ordinarily accepted non-excessive way to detain an arrestee." *Id*.

The court concluded that in the absence any evidence that the officer who handcuffed Rodriguez knew, or should have known, about Rodriguez's pre-existing condition, the officer was entitled to judgment as a matter of law. Construing the facts in the light most favorable to the plaintiff, the court concludes that Gagne's handcuffing of Satterwhite did not rise to the level of a constitutional violation. Gagne is entitled to summary judgment on Satterwhite's excessive force claims.

### D. State Law Claims

Independent of his federal claims, the court understands Satterwhite to invoke the pendent jurisdiction of this court to consider his state tort claims for assault and kidnapping challenging the actions of Gagne on August 10, 2004. *See* 28 U.S.C. § 1367. Having determined that the defendant is entitled to summary judgment on the plaintiff's constitutional claims, the court declines to exercise supplemental jurisdiction of the plaintiff's state law tort claims pursuant to 28 U.S.C. § 1367. These claims will be dismissed without prejudice.

### F. The Request to File Criminal Charges

Satterwhite requests that this court charge Gagne with first degree assault and first degree kidnapping. Satterwhite, as a private citizen, cannot commence criminal proceedings on his own. *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."); *Leeke v. Timmerman*, 454 U.S. 83 (1981) (same); *see also Savage v. Arnold*, 403 F. Supp. 172, 174 (E.D. Pa. 1975) (private citizens have no right to institute criminal prosecutions in federal

court); *United States v. Panza*, 381 F. Supp. 1133 (W.D. Pa. 1974) (same). The decision whether to prosecute a particular case is in the discretion of the prosecutorial authority. *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *Otero v. U. S. Atty. Gen.*, 832 F.2d 141 (11th Cir. 1987). Such a decision is not generally subject to judicial review. *Massey v. Smith*, 555 F.2d 1355, 1356 (8th Cir. 1977). Consequently, Satterwhite's request to initiate criminal charges against Gagne is due to be dismissed.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant Gagne's motion for summary judgment (*Doc. No. 8*) be GRANTED;

2. Judgment be ENTERED in favor of the Defendant and against the Plaintiff on the Plaintiff's federal claims;

3. Satterwhite's pendent state law claim(s) be DISMISSED without prejudice;

4. This case be DISMISSED; and

5. The costs of this proceeding be TAXED against the Plaintiff for which execution may issue.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 17, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The

parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 4th day of March, 2008.

       /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE